# IN THE SUPREME COURT OF TEXAS

No. 17-0588

ERIC D. HILLMAN, PETITIONER,

v.

NUECES COUNTY, TEXAS AND NUECES COUNTY DISTRICT ATTORNEY'S OFFICE, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

**Argued October 31, 2018**

JUSTICE BOYD delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion, in which JUSTICE LEHRMANN and JUSTICE DEVINE joined.

A former assistant district attorney filed this suit alleging that the county wrongfully terminated his employment because he refused his supervisor's order to withhold exculpatory evidence from a criminal defendant. The trial court dismissed the suit for lack of jurisdiction, and the court of appeals affirmed. Because we agree with those courts that governmental immunity bars the suit, we also affirm.

# I.
## Background[1]

Eric Hillman served as an assistant district attorney in Nueces County for two years. While preparing to prosecute a defendant charged with intoxicated assault and leaving the scene of an accident, Hillman discovered and interviewed a witness who said she was with the defendant the night of the incident and he was not intoxicated. Because the police report did not identify this witness, Hillman told his supervisor that he needed to disclose the witness to the defendant's attorney. The supervisor disagreed and instructed Hillman not to disclose the witness. Believing that he was legally required to disclose the witness, Hillman called the State Bar Ethics Hotline and the Texas Center for Legal Ethics for advice. Both told him he should disclose the information.

Three days before the defendant's trial, the victim confirmed to Hillman that the witness had been present at the scene. Hillman relayed this information to his supervisor and informed her that he had decided to disclose the witness to the defense attorney. On the day of trial, Hillman was fired for "failing to follow instructions." He alleges he was fired solely for refusing to withhold exculpatory evidence.

Hillman sued the County, the District Attorney's Office, and then-District Attorney Mark Skurka, in his official capacity (collectively, the County), seeking actual damages for lost wages and benefits, mental anguish, pain and suffering, and loss of earning capacity, and exemplary damages. The County moved to dismiss on the ground that governmental immunity bars Hillman's

---

[1] We construe Hillman's pleaded allegations liberally to determine whether they allege facts that establish a waiver of governmental immunity. *Harris County v. Annab*, 547 S.W.3d 609, 612–13 (Tex. 2018). For purposes of this appeal, we accept Hillman's pleaded facts as true. If the pleadings and record "conclusively negate the existence of jurisdiction, . . . the suit should be dismissed." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012).

claims. The trial court agreed and dismissed the case, and the court of appeals affirmed, 559

S.W.3d 183, 187 (Tex. App.—Corpus Christi–Edinburg 2017).

## II.
## Governmental Immunity

Sovereign immunity—usually called governmental immunity when referring to political

subdivisions—protects governmental entities against suits and legal liabilities. *City of Houston v.*

*Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018); *see also Reata Constr. Corp.*

*v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). The County pleaded immunity from both suit

and liability in this case, but only immunity from suit implicates the courts' jurisdiction. *State v.*

*Lueck*, 290 S.W.3d 876, 880 (Tex. 2009).  Because the trial court dismissed this case for lack of

jurisdiction, we focus here solely on governmental immunity from suit. Because Hillman filed suit

seeking money damages against a county and its department and official, governmental immunity

bars this suit unless immunity has been waived. *See City of Houston*, 549 S.W.3d at 575.

Like every court of appeals that has addressed the issue,[2] the court of appeals concluded

here that governmental immunity applies to Hillman's wrongful-termination claim and has not

been waived. Presenting three alternative grounds for reversal, Hillman argues that (1) this Court

---

[2] *See Beaumont Indep. Sch. Dist. v. Thomas*, No. 09-15-00029-CV, 2016 WL 348949, at *3 (Tex. App.—
Beaumont Jan. 28, 2016, no pet.) (mem. op.); *Tex. State Office of Admin. Hearings v. Birch*, No. 04-10-00777-CV,
2010 WL 5141647, at *1 (Tex. App.—San Antonio Dec. 15, 2010, no pet.) (mem. op.); *Midland Indep. Sch. Dist. v.*
*Watley*, 216 S.W.3d 374, 381 (Tex. App.—Eastland 2006, no pet); *Nueces County v. Thornton*, No. 13-03-011-CV,
2004 WL 396608, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 4, 2004, no pet.) (mem. op.); *Salazar v. Lopez*,
88 S.W.3d 351, 353 (Tex. App.—San Antonio 2002, no pet.); *Dall. Metrocare Servs. v. Pratt*, No. 05-02-00327-CV,
2002 WL 31238640, at *2 (Tex. App.—Dallas Oct. 7, 2002) (not designated for publication), *rev'd in part on other*
*grounds*, 124 S.W.3d 147 (Tex. 2003); *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex.
App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.); *Carroll v. Black*, 938 S.W.2d 134, 134–35 (Tex. App.—Waco
1996, writ denied).

abrogated or waived the County's immunity from this type of suit in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), in which we recognized a cause of action for wrongful termination of an at-will employee for refusal to perform an illegal act, (2) the Texas legislature waived the County's immunity through the Michael Morton Act, or (3) we should abrogate or waive the County's immunity from such suits today. Although Hillman and his supporting amici[3] bolster these grounds with serious and important policy concerns, we ultimately find the grounds themselves unconvincing.

**A. *Sabine Pilot***

Texas—"steadfastly an at-will employment state"—generally permits both employers and employees to terminate their relationship at any time for any reason unless they contractually agree otherwise. *Ritchie v. Rupe*, 443 S.W.3d 856, 885–86 (Tex. 2014). The law recognizes, however, a number of exceptions to this rule. One "very narrow exception to the employment-at-will doctrine," which we adopted in *Sabine Pilot*, prohibits employers from terminating at-will employees "for the sole reason that the employee refused to perform an illegal act." 687 S.W.2d at 735. An employer who terminates an employee solely for that reason is liable to the employee for all resulting "reasonable tort damages, including punitive damages." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 661 (Tex. 2012).

*Sabine Pilot* involved claims against a private-sector employer, and this Court's very brief opinion never mentioned the duties or obligations of government employers. Noting that the Court

---

[3] We received amicus briefs in support of Hillman from the Innocence Project, Inc. and the Innocence Project of Texas; the Texas Criminal Defense Lawyers Association; and The Cato Institute, The American Civil Liberties Union, The Due Process Institute, Law Enforcement Action Partnership, and Texas criminal law scholars. We received amicus briefs supporting the County from the State of Texas; the Texas Association of School Boards Legal Assistance Fund; and the Texas Municipal League, Texas Association of Counties, and the Texas City Attorneys Association.

did not expressly limit the exception to private employers or declare it inapplicable to government employers, Hillman argues that *Sabine Pilot* prohibits all employers—government as well as private—from terminating at-will employees solely for refusing to perform an illegal act. This argument reads too much into *Sabine Pilot*. Nothing in that opinion indicates anything regarding government employers. Because we simply did not consider or address whether the exception applies to government employers in *Sabine Pilot*, it provides no controlling principle on that issue here. *See In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 77 (Tex. 2007) ("Because we did not address the question in *Wilson*, we do not consider *Wilson* controlling.") (referring to *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 261 (Tex. 1994)).

Hillman suggests that even if *Sabine Pilot* did not resolve the issue, we can and should clarify today that the *Sabine Pilot* exception applies to government employers. *See Sabine Pilot*, 687 S.W.2d at 735 ("[T]his court is free to judicially amend a judicially created doctrine."). We have no problem holding that the exception applies to all Texas employers, in the sense that they all have a common-law-tort duty not to terminate at-will employees solely because the employee refuses to perform an illegal act. But holding that the *Sabine Pilot* exception applies to government employers does not help Hillman. Hillman's problem is not that the duty does not apply to government employers, but that immunity bars any suit for a government employer's breach of that duty.

Governmental immunity protects all governmental entities against suits and liabilities for their governmental actions, even when acting as employers. *See City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007) (discussing the "heavy presumption in favor of immunity" for government actions). The legislature has provided a limited waiver of that immunity for certain

tort and breach-of-contract actions.[4] These statutes do not create tort or contractual duties or impose them on governmental entities. Those common-law duties preexist the statutes and apply to governmental entities as to anyone else, but immunity bars suits for breach of those duties. *See City of Tyler v. Likes*, 962 S.W.2d 489, 494 (Tex. 1997) (characterizing governmental immunity as "a bar to a suit that would otherwise exist").

Instead of creating or imposing duties, the statutes waive the immunity that would otherwise protect the government, removing the barrier that precludes suits or liability for breach of those preexisting common-law duties. So although we can say that the common-law-tort duty we recognized in *Sabine Pilot* applies to all Texas employers, Hillman still cannot pursue this suit for the County's alleged breach of that duty unless the legislature has waived the County's governmental immunity. Because *Sabine Pilot* did not involve a governmental defendant and did not address governmental immunity or its waiver, it does not support Hillman's argument that the trial court had jurisdiction over his claim.

**B. The Michael Morton Act**

More than fifty-five years ago, the United States Supreme Court held that the Constitution's due-process clause prohibits criminal prosecutors from suppressing material evidence that is "favorable to an accused." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Just over five years ago, the Texas legislature statutorily addressed "*Brady* violations" by passing the Michael Morton Act. *See* Act of May 16, 2013, 83d Leg., R.S., ch. 49 (S.B. 1611) (codified at

---

[4] *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.009 (waiving immunity for certain tort claims against governmental entities); TEX. GOV'T CODE §§ 2260.001–.108 (providing procedures for resolving certain contract claims against units of state government); TEX. LOC. GOV'T CODE §§ 271.151–.160 (waiving immunity for certain contract claims against local governmental entities). Hillman does not contend that the Tort Claims Act or chapter 271 waivers apply to and waive immunity for his claims.

TEX. CRIM. PROC. CODE § 39.14) (amending subsection (a) and adding subsections (c) through (n) to section 39.14). The Michael Morton Act expressly requires prosecutors to

> disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

TEX. CODE CRIM. PROC. § 39.14(h). Prosecutors must disclose such information whenever they discover it, whether "before, during, or after trial." *Id.* § 39.14(k).

Hillman contends that the Michael Morton Act required him to disclose the witness's information in the case he was prosecuting, so the County wrongfully terminated him for refusing to perform an illegal act. But even accepting these assertions as true,[5] the issue here is not whether Hillman has pleaded a valid *Sabine Pilot* claim, but whether the Act waives the County's governmental immunity against that claim.

To waive governmental immunity, a statute must use "clear and unambiguous language" expressing that intent. *Tooke v. City of Mexia*, 197 S.W.3d 325, 328–29 (Tex. 2006); *see* TEX. GOV'T CODE § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). When deciding whether a statute clearly and unambiguously waives governmental immunity, we

---

[5] The Attorney General, acting as counsel for the State of Texas, filed an amicus brief arguing that neither *Brady* nor the Michael Morton Act required Hillman to disclose the witness information in the underlying case because the information was readily available to the defendant, who was with the undisclosed witness on the night of the incident. Thus, the State contends, Hillman has failed to allege a valid *Sabine Pilot* claim because even if he was fired for refusing to withhold the information, he was not fired for refusing to perform an illegal act. The merits of Hillman's claim, however, are not before us in this appeal from a dismissal for lack of jurisdiction. We must decide only whether governmental immunity bars Hillman's claims, and we "adhere to the fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We need not and do not address the State's merits-related arguments.

> (1)    consider "whether the statutory provisions, even if not a model of clarity, waive immunity without doubt;"
>
> (2)    resolve any "ambiguity as to waiver . . . in favor of retaining immunity;"
>
> (3)    generally find waiver "if the Legislature requires that the [governmental] entity be joined in a lawsuit even though the entity would otherwise be immune from suit;"
>
> (4)    consider whether the legislature "provided an objective limitation on the governmental entity's potential liability"; and
>
> (5)    consider "whether the statutory provisions would serve any purpose absent a waiver of immunity."

*Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009).

Like the *Sabine Pilot* opinion, the Michael Morton Act does not address governmental immunity or waiver at all. None of its language waives immunity "without doubt" or even creates any ambiguity on the point. The Act does not require that the government be joined in any lawsuit or impose any limitation on the government's potential liability in such a suit. Implicating only the fifth consideration, Hillman argues that the Act necessarily must waive the County's immunity from his wrongful-termination suit because the Act's sole purpose is to require prosecutors to disclose exculpatory evidence. He contends that the Act would be "illusory" unless it waives immunity from *Sabine Pilot* claims, and finding no waiver "would defeat the sole purpose for passing the Michael Morton Act in the first place." As Hillman puts it, "A law making it a crime for a prosecutor to withhold evidence from the defense, but at the same time allowing the prosecutor's supervisor to fire him for refusing to do so is nonsensical and cannot possibly be what the legislature intended when it enacted the Michael Morton Act."

These arguments read too much into the Michael Morton Act. The Act serves obvious purposes separate and apart from addressing any wrongful-termination issues. It codifies and "supplements" prosecutors' constitutional obligations under *Brady*. Gerald S. Reamey, *The Truth Might Set You Free: How the Michael Morton Act Could Fundamentally Change Texas Criminal*

8

*Discovery, or Not*, 48 TEX. TECH L. REV. 893, 901, 904 (2016). It requires production of several items that "previously were not discoverable" in criminal cases, including "written witness statements, written communications between the State and its agents, and work product." Cynthia E. Hujar Orr & Robert G. Rodery, *The Michael Morton Act: Minimizing Prosecutorial Misconduct*, 46 ST. MARY'S L.J. 407, 412–13 (2015). And violations of the Act may constitute grounds for reversing a conviction. *See, e.g.*, *Ex parte Temple*, No. WR-78,545-02, 2016 WL 6903758, at *1 & n.20 (Tex. Crim. App. Nov. 23, 2016) (not designated for publication) (granting post-conviction habeas relief for *Brady* violations) ("We believe that the Michael Morton Act was created to avoid problems exactly like those that arose in this case.").

Of course, the legislature could always do more to ensure that prosecutors disclose exculpatory information. Presumably, at least, prosecutors would be more likely to disclose such information if the Act authorized civil-damages suits—and waived immunity for such suits—against those who violate its requirements or who terminate subordinates who refuse to violate them. Whether countervailing policy concerns outweigh such benefits, however, "is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). And the mere fact that a statute prohibits a government official from engaging in particular conduct does not establish that the statute also waives governmental immunity whenever a government employer terminates an employee for refusing to engage in that conduct. If that were true, every statutory prohibition would waive immunity from wrongful-termination claims.

Nothing in the Michael Morton Act indicates a legislative intent to waive governmental immunity from a wrongful-termination suit under *Sabine Pilot*. No explicit language or even

9

ambiguous language indicates such an intent. We hold that the Michael Morton Act does not waive the County's governmental immunity from this suit.

### C. Judicial Abrogation of Immunity

Alternatively, Hillman urges us to abolish the "ancient and antiquated" doctrine of governmental immunity altogether, or at least modify it to allow for *Sabine Pilot* claims against governmental entities. He notes that sovereign immunity developed and exists as a common-law doctrine, and "it remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance." *Reata*, 197 S.W.3d at 375. But in fulfilling that responsibility, we must respect both our precedent and our limitations under the constitutional separation of powers.

Having existed for more than six hundred years, the governmental-immunity doctrine is "an established principle of jurisprudence in all civilized nations." *Tooke*, 197 S.W.3d at 331 (quoting *Beers v. Arkansas*, 61 U.S. 527, 529 (1857)). We first recognized it as a principle of Texas law more than 170 years ago. *See Hosner v. DeYoung*, 1 Tex. 764 (1847) ("[N]o state can be sued in her own courts without her consent, and then only in the manner indicated by that consent."). Although the justifications for its existence have evolved through the years, we have steadfastly retained it in modern times precisely because it shields "the public from the costs and consequences of improvident actions of their governments," *Tooke*, 197 S.W.3d at 332, and ensures that the taxes the public pays are used "for their intended purposes," *Reata*, 197 S.W.3d at 375.

We are not blind to the truism that, "just as immunity is inherent to sovereignty, unfairness is inherent to immunity." *City of Galveston v. State*, 217 S.W.3d 466, 480 n.38 (Tex. 2007) (Willett, J., dissenting). But as the Court's majority explained in that case, we

10

resolve that concern by deferring to the legislature, as the policy-making branch of government, "to decide whether and to what extent that immunity should be waived." *Id.* at 472–73. As important as Hillman's and his supporting amici's policy concerns may be, they do not justify discarding these fundamental principles of Texas law.

Although we defer to the legislature to waive immunity, the judicial branch retains the authority and responsibility to determine whether immunity exists in the first place, and to define its scope. As Hillman notes, we have recognized limitations on the scope of immunity in two recent cases. First, we held in *Reata* that governmental immunity does not reach counterclaims asserted against a governmental entity that "interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages," to the extent the counterclaims serve only to offset any such damages. 197 S.W.3d at 375. Then last term, in *State ex rel. Best v. Harper*, we held that immunity does not extend to counterclaims for attorney's fees under the Texas Citizens Participation Act. 562 S.W.3d 1 (Tex. 2018).

The justifications for finding that immunity did not reach the counterclaims at issue in *Reata* and *Harper* are lacking here. The *Reata* limitation supports "fundamental fairness" while still fully protecting public resources because the counterclaim it permits against the government can serve only as an offset against any damages the government might recover; and to the extent the government expends litigation costs but makes no recovery, those expenses will have been made "for their intended purposes." *See Reata*, 197 S.W.3d at 375–76. In other words, the only public resources expended will be those the government *chose* to expend when it elected to interject itself in litigation. And because the *Harper* limitation only permits a recovery of attorney's fees against a governmental entity that initiates a claim under the TCPA, "rather than

11

damages or some other uncapped sum," we reasoned in that case that the limitation "does not present any grave danger to the public fisc." *Harper*, 562 S.W.3d at —.[6]

Two important limitations in *Reata* and *Harper* are not present in *Sabine Pilot* claims. First, this is not a situation in which the governmental entity has chosen to "interject[] itself or . . . engage in litigation to assert affirmative claims." *Reata*, 197 S.W.3d at 375; *see Harper*, 562 S.W.3d at —. Governmental employers do not bring *Sabine Pilot* claims; they only defend against them. The government does not make the decision to expend resources in defending against these claims.

Second, *Sabine Pilot* claims sound in tort and thus allow for a broad range of damages, including punitive damages. *See Safeshred*, 365 S.W.3d at 657. In fact, Hillman seeks exemplary damages, as well as damages for past and future lost wages and benefits, mental anguish, pain and suffering, and loss of earning capacity. An award of such damages could most certainly disrupt the "fiscal planning of the governmental entity" in this case. *Reata*, 197 S.W.3d at 375.[7]

As a tort that the government must defend against, a *Sabine Pilot* claim is not the type of claim or counterclaim we addressed in *Reata* or *Harper*. Without protections to guard the public fisc, no basis exists to hold that governmental immunity does not reach *Sabine Pilot* claims. Nor

---

[6] Hillman's supporting amici also cite *Wasson Interests, Ltd. v. City of Jacksonville*, in which we held that immunity does not apply to breach-of-contract claims against municipalities that acted in their proprietary (as opposed to governmental) capacity when they entered the contract. 489 S.W.3d 427 (Tex. 2016). But we did not abrogate or limit governmental immunity in *Wasson*. We merely applied the law's longstanding recognition that a municipality does not act as or for the sovereign when it acts in its proprietary capacity. *Id.* at 433.

[7] *See, e.g.*, *Safeshred*, 365 S.W.3d at 658 (noting that jury awarded *Sabine Pilot* plaintiff $7,569.18 in lost wages, $10,000 in mental anguish, and $250,000 in exemplary damages); *Simmons Airlines v. Lagrotte*, 50 S.W.3d 748, 749 (Tex. App.—Dallas 2001, pet. denied) (jury awarded $2,354,504 in actual damages and $3,459,008 in exemplary damages); *Enserch Expl., Inc. v. Thorne*, No. 11-98-00070-CV, 2000 WL 34234577, at *1 (Tex. App.—Eastland Jan. 13, 2000, no pet.) (not designated for publication) (jury awarded $464,036 for past lost earnings and benefits and $100,000 for lost earning capacity and future benefits); *Willy v. Coastal States Mgmt. Co.*, 939 S.W.2d 193, 194 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (jury awarded $267,283 in actual damages and $232,717 in punitive damages, and trial court awarded $412,757.99 in prejudgment interest).

will we attempt to judicially determine and impose those fiscal protections, for that involves policy-making decisions that belong to the legislature and not to this Court. *See Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) ("[S]overeign immunity preserves separation-of-powers principles by preventing the judiciary from interfering with the Legislature's prerogative to allocate tax dollars."); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 415 (Tex. 1997) (HECHT, J., concurring) ("For this Court to invade matters so laden with political policy concerns and, by abolishing immunity from suit, to disrupt the procedures the Legislature has fashioned, would be not only contrary to our precedents but also unsound jurisprudence.").

We in no way discount the serious policy concerns that Hillman, his supporting amici, and today's concurring opinion express. Governmental immunity from *Sabine Pilot* claims eliminates one means by which the law could ensure that prosecutors disclose exculpatory evidence as *Brady* and the Michael Morton Act require. As the amici note, the Act has enjoyed broad, bipartisan support in the legislature, the public, and the press, and the legislature has further strengthened the Act in more recent legislative sessions. But to hold that governmental immunity does not apply to *Sabine Pilot* claims, we must trespass across the boundary between defining immunity's scope (a judicial task) and waiving it (a legislative task). The distinction between scope and waiver is "a fine one," and we must "be very hesitant to declare immunity nonexistent in any particular case," lest we use our authority to define the scope as "a ruse for avoiding the Legislature." *City of Galveston,* 217 S.W.3d at 471.

As we have repeatedly confirmed, "'it is the Legislature's sole province to waive or abrogate sovereign immunity.'" *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex.

13

2008)); *Rusk*, 392 S.W.3d at 93 (same in the tort-claims context); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012) (same in the employment context); *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 201 n.49 (Tex. 2010). That the legislature has recently revised the Michael Morton Act to strengthen its protections illustrates its continuing awareness of the Act and its importance, as well as its willingness to take steps to improve it. Whether waiving immunity from *Sabine Pilot* claims should be the next step in that process is up to the legislature, and we must defer to it to "protect its policymaking function." *Wasson*, 489 S.W.3d at 432–33.

**D. Ultra Vires**

Finally, we note that the County suggests in its brief that, if we determine that immunity does not apply to *Sabine Pilot* claims, we should also hold that a *Sabine Pilot* violation is an *ultra vires* act, giving rise only to prospective injunctive relief and not to claims for damages or other "normal tort remedies." Picking up on this idea, several amici supporting Hillman urge us to allow an ultra vires claim if we determine that immunity *does* apply, and to remand the case to allow Hillman to pursue that claim. And today's concurring opinion suggests that Hillman "arguably" has grounds for an *ultra vires* claim on remand. *Post* at __. Hillman, however, adamantly insists we should not address this issue because we have "long held that a *Sabine Pilot* cause of action sounds in tort," and in any event, the County waived the issue by failing to raise it in the courts below. In light of Hillman's position on this potential alternative remedy, we will not address it here, and we express no opinion on the validity of an ultra vires claim under these circumstances.

### III.
### Conclusion

"Sovereign immunity from suit defeats a trial court's subject matter jurisdiction." *Miranda*, 133 S.W.3d at 225. When, as here, a claim falls within the realm of governmental

14

immunity, courts have no jurisdiction to hear the case unless immunity has been waived. We hold that neither *Sabine Pilot* nor the Michael Morton Act waives the County's governmental immunity from Hillman's wrongful-termination claim, and we defer to the legislature to decide whether such a waiver would be appropriate as a matter of public policy. We affirm the trial court's judgment granting the County's plea to the jurisdiction and dismissing the case.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: March 15, 2019