**Affirmed and Opinion filed March 26, 2026.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-24-00118-CV
_____

**ASPIRE POWER VENTURES, LP, Appellant**

**V.**

**PUBLIC UTILITY COMMISSION OF TEXAS, ELECTRIC RELIABILITY COUNCIL OF TEXAS, THOMAS GLEESON, LORI COBOS, JIMMY GLOTFELTY, KATHLEEN JACKSON, AND COURTNEY HJALTMAN, Appellees**

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-24-003384**

## OPINION

As part of its responsibility to ensure an adequate and reliable Texas electric grid, the Legislature requires ERCOT to procure Ancillary Services aimed at keeping electricity supply and demand balanced. ERCOT did just that when it adopted protocols establishing and modifying the ERCOT Contingency Reserve Service (ECRS), a program designed to complement other Ancillary Services

already in use.

When ERCOT adopted the ECRS protocols, it did so under authority delegated to it by the Public Utility Commission of Texas (PUC), but outside of the rule-making requirements of the Administrative Procedure Act (APA). This appeal concerns whether ERCOT's noncompliance with the APA renders the protocols invalid and whether the PUC's Commissioners exceeded their authority in relation to ERCOT's adoption of ECRS.

We hold that ERCOT protocols are not subject to the APA, the Commissioners' acts were well within their statutory authority, and the PUC has exclusive jurisdiction over ERCOT protocols. We affirm the trial court's orders granting the PUC's and ERCOT's pleas to the jurisdiction.

# BACKGROUND

## A.  ERCOT and its protocols

ERCOT is the PUC-certified "independent organization" charged with operating the State's competitive electric market and ensuring the "reliability and adequacy" of the electric grid.[1] Although ERCOT "is organized as a membership-based nonprofit corporation," it "is not a typical corporation."[2] ERCOT's "business" is "set forth by statute," and it "operates under the direct control and oversight of the PUC," which "has complete authority to oversee and investigate" ERCOT's "operations" so as to ensure that ERCOT "adequately performs [its] functions and duties."[3] This appeal concerns one of those duties: adopting protocols.

The PUC has delegated to ERCOT the authority to "adopt and enforce rules

---

[1]     TEX. UTIL. CODE § 39.151(a), (c); *CPS Energy v. ERCOT*, 671 S.W.3d 605, 626 (Tex. 2023).

[2]     *CPS Energy*, 671 S.W.3d at 626.

[3]     TEX. UTIL. CODE § 39.151(d); *CPS Energy*, 671 S.W.3d at 623, 626.

2

relating to the reliability of the regional electrical network."[4] ERCOT, in turn, "has utilized this delegated rulemaking authority to establish operational rules known as Nodal Protocols"—highly detailed rules that, along with other policies, guidelines, and procedures, "provide the framework for the administration of the Texas electricity market."[5]

ERCOT's process for adopting and revising protocols—referred to as the Nodal Protocol Revision Request (NPRR) process—"has long been in effect."[6] It is open to numerous entities, permits comment on an NPRR, involves committee review before ERCOT's board acts, and provides "a process for review … which culminates in a suit for judicial review in district court."[7] In 2021, the Legislature amended the Public Utility Regulatory Act (PURA) to require (1) that ERCOT "establish and implement a formal process for adopting new protocols or revisions to existing protocols," and (2) that ERCOT-adopted protocols "may not take effect before receiving [PUC] approval."[8] ERCOT "already had … in place" a formal process for adopting and revising protocols (the NPRR process), but in response to the 2021 legislation added a provision that "[a]ll Revision Requests require approval

---

[4]     *PUC v. RWE Renewables Am., LLC*, 691 S.W.3d 484, 486 (Tex. 2024) (quoting TEX. UTIL. CODE § 39.151(d)).

[5]     *Id.* at 486, 489.

[6]     *Id.* at 489, 491; *see* ERCOT, Nodal Protocols § 21, https://www.ercot.com/mktrules/nprotocols/current.

[7]     *RWE*, 691 S.W.3d at 489–90 ("This painstaking procedure serves to leverage the expertise of ERCOT members and industry stakeholders while maintaining transparency and affording interested parties plentiful opportunities to weigh in."), 492 n.11; *see* ERCOT, Nodal Protocols § 20.1 (ADR with ERCOT); 16 TEX. ADMIN. CODE §§ 22.251, 25.362(c)(5) (complaint with the PUC); TEX. UTIL. CODE § 15.001 (suit for judicial review).

[8]     *RWE*, 691 S.W.3d at 487, 492; *see* Act of May 30, 2021, 87th Leg., R.S., ch. 425, § 3, sec. 39.151(d), (g-6), 2021 Tex. Gen. Laws 830, 830–32 (current version at TEX. UTIL. CODE § 39.151(g-6)).

by the PUCT prior to implementation."[9]

## B.    Ancillary Services and ECRS

"For the ERCOT grid to remain functional, electricity supply and demand must remain balanced at a frequency of 60 hertz."[10] Yet "consumption and generation of electricity are not always equally matched," as the PUC notes. So to maintain a balanced grid and "reduce operational risks associated with variability and uncertainty,"[11] ERCOT is required to "procure[] ancillary or reliability services."[12] ERCOT's protocols list four Ancillary Services: Regulation Service, Responsive Reserve Service (RRS), Non-Spinning Reserve Service, and the primary target of this litigation: the ERCOT Contingency Reserve Service, or ECRS.[13]

ERCOT established ECRS in 2019 with the adoption of NPRR 863. ERCOT modified ECRS over the next few years with the adoption of several other NPRRs, and it implemented the service in 2023. According to ERCOT, ECRS is used "to restore or maintain" a balanced grid "[i]n response to significant depletion of RRS," "[a]s a backup Regulation Service," and "to avoid getting into or during an Energy Emergency Alert."[14] In other words, ECRS is meant to "address certain reliability risks that ERCOT's other Ancillary Services do not adequately address," including risks related to "intermittent wind and solar generation resources" and "the ever-present heightened reliability risks presented by ERCOT's intrastate nature."

---

[9]    ERCOT, Nodal Protocols § 21.4.11; *see RWE*, 691 S.W.3d at 492.

[10]    *PUC v. Luminant Energy Co.*, 691 S.W.3d 448, 455 (Tex. 2024).

[11]    ERCOT, ERCOT ANCILLARY SERVICES STUDY 10 (2024), https://www.ercot.com/files/docs/2024/10/07/ERCOT-Ancillary-Services-Study-Final-White-Paper.pdf.

[12]    TEX. UTIL. CODE §§ 39.159(b)(3), 39.159(d).

[13]    ERCOT, Nodal Protocols § 3.17.1–.4.

[14]    ERCOT ANCILLARY SERVICES STUDY 30; *see id.* at 7 ("ECRS is capacity that can respond in 10 minutes and is used to recover frequency; cover intra-hour forecast uncertainties; address load, wind, and solar variability/ramps; and replace deployed reserves.").

4

## C.   Aspire's lawsuit

Aspire is a Qualified Scheduling Entity (QSE) that "buys and sells wholesale electricity in ERCOT's real-time electricity market, serving as a conduit between companies that generate electricity and companies that sell electricity on a retail basis." Aspire's view of ECRS does not align with ERCOT's and the PUC's. Describing it as a "costly, market-distorting attempt to bolster reliability," Aspire claims that ECRS "unnecessarily increases the price of electricity" because participating generators are paid "to withhold part of their generating capacity," which "decrease[s] the supply of electricity available to the grid." The resulting "artificial fluctuations in prices," Aspire says, expose QSEs like Aspire to a risk of financial loss because they contract in advance to buy and sell electricity at specific prices before the wholesale price is determined. Flaws aside, Aspire also believes that ECRS is illegal. This appeal is part of Aspire's efforts to establish so.

Aspire first challenged ECRS in February 2024 when it pursued a direct appeal in the Third Court of Appeals of three PUC orders approving ERCOT-adopted protocols relating to ECRS.[15] Aspire filed the appeal under a PURA provision that permits judicial review of "competition rules adopted by" the PUC.[16] Several months later, however, the Texas Supreme Court held in the *RWE Renewables* case that a PUC order approving an ERCOT-adopted protocol is not a competition rule subject to direct appeal.[17] After transfer to this Court, we granted dismissal of that direct appeal.[18]

---

[15]   ERCOT NPRRs 1096, 1148, and 1178. *See Aspire Power Ventures, LP v. PUC*, No. 03-24-00102-CV, 2024 WL 1942445, at *1 (Tex. App.—Austin May 3, 2024).

[16]   TEX. UTIL. CODE § 39.001(e), (f).

[17]   *See* 691 S.W.3d at 486, 492.

[18]   *See Aspire Power Ventures, LP v. PUC*, No. 15-24-00035-CV, 2024 WL 4293602, at *1 (Tex. App.—15th Dist. Sept. 26, 2024, no pet.).

Before *RWE* issued, Aspire filed a separate lawsuit against the PUC in Travis County District Court. Aspire sought a declaration under § 2001.038 of the APA that the same three PUC orders approving ERCOT-adopted protocols are invalid because they are "rules" within the meaning of the APA and yet the PUC "did not substantially comply with the mandatory requirements of the APA when adopting" them.[19] Aspire amended its petition twice after the Texas Supreme Court issued *RWE*. Taken together, Aspire:

- added ERCOT as a defendant;

- sought a declaration under both the APA's § 2001.038 and the UDJA that ten ERCOT-adopted, ECRS-related protocols[20] and six PUC approval orders[21] are invalid and void because, although they are "rules" within the meaning of the APA, neither ERCOT nor the PUC substantially complied with the mandatory rulemaking requirements of the APA, including the public participation and reasoned justification requirements, when adopting and approving them, respectively;

- sought a declaration, also under § 2001.038 and the UDJA, that Chapter 21 of ERCOT's Nodal Protocols (the NPRR process) does not comply with the APA; and

- alleged that the PUC's Commissioners acted ultra vires by authorizing ERCOT to adopt (1) rules creating an Ancillary Service in the form of ECRS and (2) ECRS protocols that constitute PURA-prohibited "market-power abuse."

Relevant to the allegation that ERCOT's protocols are APA rules, Aspire observed that ERCOT adopted them "under rulemaking authority originally given to the PUC and then delegated to ERCOT."

The PUC and ERCOT each filed a plea to the jurisdiction. They argued that

---

[19]    Aspire also sought a declaration to the same effect under the Uniform Declaratory Judgments Act (UDJA). *See* TEX. CIV. PRAC. & REM. CODE § 37.006(b).

[20]    ERCOT NPRRs 863, 992, 1015, 1079, 1096, 1148, 1178, 1196, 1213, and 1224.

[21]    PUC Orders Approving NPRRs 1079, 1096, 1148, 1178, 1196, and 1213.

Aspire failed to allege either a valid claim within § 2001.038's limited waiver of sovereign immunity or a valid ultra vires claim. The trial court conducted a hearing before granting both pleas and dismissing all of Aspire's claims. Aspire appeals the dismissal of its requested declarations against the PUC and ERCOT and its ultra vires claims against the PUC's Commissioners.

## DISCUSSION

Absent an express waiver or exception, the PUC, its Commissioners, and ERCOT generally enjoy sovereign immunity.[22] Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and is properly raised in a plea to the jurisdiction.[23] When, as here, a plea to the jurisdiction challenges the pleadings, we determine if the pleader alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case.[24] We construe the pleadings liberally in favor of the plaintiff while looking to the pleader's intent.[25] We review the trial court's order de novo.[26]

Over the life of this litigation, Aspire has asserted three grounds for waiver: PURA § 39.001(e), Texas Government Code § 2001.038, and ultra vires. For the reasons stated below, we hold that none of them waive the PUC's or ERCOT's immunity. And in any event, the PUC has exclusive jurisdiction but Aspire failed to exhaust administrative remedies.

---

[22] *CPS Energy*, 671 S.W.3d at 628 (ERCOT); *Matzen v. McLane*, 659 S.W.3d 381, 387–88 (Tex. 2021) (agencies and officials).

[23] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

[24] *Id.* at 226.

[25] *Id.*

[26] *Matzen*, 659 S.W.3d at 388.

# I. PURA § 39.001

Aspire first challenged ECRS when it pursued in the Third Court of Appeals a direct appeal of ERCOT-adopted protocols relating to ECRS.[27] Aspire sought to invoke direct appellate review under PURA § 39.001(e), which permits judicial review of "competition rules adopted by the [PUC]."[28] But whether a PUC order approving an ERCOT protocol was a "competition rule" subject to judicial review under § 39.001(e) was an issue the Texas Supreme Court had agreed to hear in different case: *PUC v. RWE Renewables Americas, LLC*.[29] After oral argument in *RWE*, the PUC asked the Third Court to abate its appeal and await the Texas Supreme Court's review of the same type of order under the same statutory authority.[30] The Third Court agreed to abate the appeal.[31]

The next month, the Texas Supreme Court held in *RWE* that a PUC order approving an ERCOT-adopted protocol is not a "competition rule[] adopted by the PUC" under § 39.001(e).[32] For two primary reasons, the Texas Supreme Court rejected the argument that PUC approval of protocols adopted by ERCOT served to "effectively convert ERCOT protocols into PUC rules subject to the same review procedures."[33]

---

[27] *See Aspire Power Ventures, LP v. PUC*, No. 03-24-00102-CV, 2024 WL 1942445, at *1 (Tex. App.—Austin May 3, 2024); ERCOT NPRRs 1096, 1148, and 1178.

[28] TEX. UTIL. CODE § 39.001(e), (f); *see Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 360 (Tex. 2019) (governmental immunity clearly waived when statutory provisions waive immunity without doubt).

[29] *See* PUC Brief on the Merits, *PUC v. RWE Renewables Americas, LLC*, No. 23-0555 (Tex. Jan. 18, 2024).

[30] *See* Motion to Abate, *Aspire Power Ventures, LP v. PUC*, No. 03-24-00102-CV (Tex. App.—Austin Apr. 12, 2024).

[31] *See Aspire Power Ventures, LP*, 2024 WL 1942445, at *1.

[32] *See* 691 S.W.3d at 486, 492.

[33] *Id.* at 491.

*First*, PURA makes clear that ERCOT is the entity that *adopts* new or revised protocols while the PUC *approves* them.[34] The distinction between adoption and approval is "deceptively significant," the *RWE* Court explained, because "the APA's requirements … are exclusively and repeatedly directed at rules 'adopted' by a 'state agency.'"[35] Given "the Legislature's deliberate decision *not* to designate the PUC as the entity that 'adopts' ERCOT protocols," the PUC's approval order was only a "ratification decision that simply allowed protocol revisions … already … adopted by ERCOT" to become effective, not "an agency-adopted 'rule' under the [APA]."[36] Consequently, the approval order was not a competition rule *adopted by the PUC* subject to direct appeal under § 39.001(e).[37]

*Second*, the Court held that "ERCOT rulemaking and PUC rulemaking" are entirely "distinct," "separate," "independent endeavors."[38] Whereas ERCOT protocols are adopted and revised via delegated authority using the NPRR process, the PUC is subject to the rulemaking requirements of the APA.[39] When the Legislature provided that competition rules adopted by the PUC "shall be conducted under [the APA], *except as otherwise provided by this chapter*," the latter clause recognized that ERCOT's distinct review process under Subchapter D of Chapter 39 was not included in the PUC's review processes governed by the APA.[40] The Court

---

34    *Id.*; *see* Tex. Util. Code § 39.151(g-6) ("Protocols adopted by [ERCOT] …. The [PUC] may approve ….").

35    *RWE*, 691 S.W.3d at 491. Aspire acknowledges, and both the PUC and ERCOT observe, that ERCOT is not a state agency, but instead an organ of government. *See CPS Energy*, 671 S.W.3d at 614–17.

36    *RWE*, 691 S.W.3d at 491–92 (emphasis added).

37    *Id.* at 492.

38    *Id.* at 491–92.

39    *Id.* at 489–91.

40    Tex. Util. Code § 39.001(e) (emphasis added).

held that blurring that important distinction by treating ERCOT-adopted rules the same as PUC rules would disrupt the "legislative and regulatory schemes [that] have … envisioned separate, complementary purposes of and procedures for PUC rules and ERCOT protocols."[41]

After Aspire's direct appeal was transferred to this Court, we granted the PUC's unopposed motion and dismissed the appeal for lack of jurisdiction based on the Texas Supreme Court's decision in *RWE*.[42]

## II.  Declarations under APA § 2001.038

Meanwhile, Aspire had filed a separate lawsuit against the PUC and ERCOT in Travis County District Court asserting a waiver of jurisdiction under § 2001.038 of the APA. Under § 2001.038, the "validity … of a rule … may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs … a legal right or privilege of the plaintiff."[43] "The state agency must be made a party to the action."[44]

There is no question that § 2001.038 expressly waives sovereign immunity.[45] The issue presented here is whether Aspire pleaded a valid claim that comes within § 2001.038's waiver.[46] Aspire sought declarations that ERCOT's ECRS protocols and the PUC's approval orders are invalid because, although they are "rules" within

---

[41]     *RWE*, 691 S.W.3d at 491.

[42]     *See Aspire Power Ventures, LP v. PUC*, No. 15-24-00035-CV, 2024 WL 4293602, at *1 (Tex. App.—15th Dist. Sept. 26, 2024, no pet.).

[43]     TEX. GOV'T CODE § 2001.038(a). Aspire alleged that the challenged protocols and approval orders interfere with and impair its legal rights and privileges.

[44]     *Id.* § 2001.038(c).

[45]     *See Kensington Title-Nevada, LLC v. TDSHS*, 710 S.W.3d 225, 230 (Tex. 2025).

[46]     *See Matzen*, 659 S.W.3d at 389 (pleaded facts must affirmatively demonstrate that waiver applies); *Trinity Settlement Servs., LLC v. Tex. State Sec. Bd.*, 417 S.W.3d 494, 501 (Tex. App.—Austin 2013, pet. denied) (§ 2001.038 waives immunity only for a valid claim).

the meaning of the APA, the PUC failed to substantially comply with the APA's requirements when adopting them. As Aspire acknowledges, and the PUC and ERCOT agree, that "boils down" to whether ERCOT's protocols adopting and modifying ECRS are agency "rules" under the APA.[47]

*RWE* decidedly answers that question "No." ERCOT protocols are not "rules adopted by a state agency" subject to the APA because they are adopted by ERCOT (which is not a state agency but a "private, nonprofit corporation"), rather than the PUC (which is an agency but merely approves them).[48] The "Legislature deliberately uses the term 'adopt' throughout the APA—no reference is made to an agency's 'approval' of a rule."[49] Indeed, if PUC approval orders do not "convert" ERCOT protocols into PUC rules subject to the APA,[50] as *RWE* decided, then ERCOT protocols cannot be rules subject to the APA.

Aspire tries to distinguish *RWE* on several grounds, but none are convincing.

*First*, Aspire argues that the PUC "would be subject to and constrained by the APA" had it adopted the ECRS protocols. But the PUC did not adopt them; ERCOT did, and *RWE* repeatedly stressed that ERCOT and PUC rulemaking are distinct, separate, and independent processes.[51]

*Second*, relying on the Legislature's use of the word "delegate" in PURA § 39.151(d), Aspire contends that the PUC cannot delegate its rulemaking responsibilities to ERCOT shorn of the APA's requirements, and thus ERCOT necessarily "stands in the shoes" of the PUC when it adopts protocols. But as the

---

[47]    *See* TEX. GOV'T CODE § 2001.038(a) (declaratory judgment to determine validity of a "rule").

[48]    *RWE*, 691 S.W.3d at 491; *see CPS Energy*, 671 S.W.3d at 617 ("ERCOT is an 'organ of government.'").

[49]    *RWE*, 691 S.W.3d at 491.

[50]    *Id.*

[51]    *See id.* at 490–92.

11

Texas Supreme Court held in *RWE*, the two entities stand in entirely separate and distinct shoes: ERCOT adopts protocols under one set of rules, and the PUC adopts rules under another.[52] That leaves no room for Aspire's delegation theory that ERCOT protocols are really just PUC rules in disguise.

*Third*, Aspire argues that when the Legislature amended PURA in 2021 to require ERCOT to establish a formal process for adopting and revising protocols, it did not expressly exempt that process from the APA.[53] But express exemption was unnecessary because, as *RWE* explained in great detail, the Legislature achieved the same result through other statutory means.[54]

*Finally*, Aspire directs us to several authorities that it says "reflect the fundamental principle that a delegor like the PUC here can delegate only the authority it has, subject to all the same constraints to which it is subject." But even assuming that is a universal common-law rule, such rules "may be abrogated by statute" so long as a statute does so "either expressly or by necessary implication."[55] It is impossible to read *RWE* as falling short of doing precisely that here.

Aspire failed to allege facts affirmatively demonstrating jurisdiction over its claims seeking a declaration that ERCOT-adopted and PUC-approved ECRS protocols are invalid and void.

## III. Ultra Vires

Aspire also alleged that the PUC's Commissioners acted ultra vires by allowing ERCOT to adopt protocols that (1) pay generators to withhold part of their capacity as reserves, and (2) authorize ERCOT to adopt a new "ancillary service" in

---

[52] *Id.*

[53] *See* TEX. UTIL. CODE § 39.151(g-6).

[54] *See* 691 S.W.3d at 490–92.

[55] *Taylor v. Tolbert*, 644 S.W.3d 637, 649 (Tex. 2022).

12

the form of ECRS. "Plaintiffs who seek to bypass sovereign immunity using an ultra vires claim must plead, and ultimately prove, that the defendant government official acted without legal authority or failed to perform a ministerial act."[56] Aspire alleged the former. "An officer acts without legal authority if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."[57] But if "the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity."[58]

For twenty years PURA § 39.151 has required the PUC to "adopt and enforce rules relating to the reliability of the regional electrical network," *and* in its discretion to "delegate those responsibilities to an independent organization" like ERCOT.[59] Doing precisely what PURA authorized the PUC to do cannot be ultra vires.

Aspire specifically complains that the PUC's Commissioners acted ultra vires because ECRS allows market participants to withhold power in violation of PURA § 39.157(a), which defines "market power abuses" to include "predatory pricing, *withholding of production*, precluding entry, and collusion.[60] But PURA also requires the PUC to ensure that ERCOT meets the reliability needs of the power

---

[56]     *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (confirming that ultra vires suits proceed against government actors in their official capacity).

[57]     *Matzen*, 659 S.W.3d at 388.

[58]     *Id.*

[59]     *See* Act of May 29, 2005, 79th Leg., R.S., ch. 797, § 8, 2005 Tex. Gen. Laws 2728, 2729–30.

[60]     TEX. UTIL. CODE § 39.157(a) (emphasis added). Section 39.157(a) directs the PUC to "monitor market power associated with the generation, transmission, distribution, and sale of electricity" and, upon finding that "market power abuses" are occurring, to "require reasonable mitigation" and pursue appropriate remedies. *Id.*

region, and to prepare for extreme weather conditions by procuring "ancillary or reliability services," such as "standby power" and "backup power" as needed.[61] To the extent system reliability requires standby or backup power for such emergencies, such power must be withheld as standby or backup; as the Supreme Court recognized in 2024, deciding when circumstances require withholding power to ensure reliability "is the Commission's job, not the judiciary's."[62]

Finally, Aspire also alleged that the PUC's Commissioners acted ultra vires by authorizing ERCOT to create ECRS because PURA § 35.004(e) authorizes only the PUC to establish new Ancillary Services. But § 35.004(e) is merely a nonexclusive definition of "ancillary services" that allows the PUC to add by rule "any other services [it] may determine" should be included in the meaning of that term.[63] The provision does not prohibit the PUC from delegating to ERCOT the responsibility to adopt rules for additional Ancillary Services programs.[64] Ancillary Services are a tool used to ensure grid reliability, and PURA expressly directs ERCOT to procure them.[65]

## IV.  PUC Exclusive Jurisdiction

Even if neither the PUC nor ERCOT were protected by sovereign immunity, the district court would have no jurisdiction for an additional reason: the PUC's jurisdiction is exclusive and Aspire failed to exhaust its administrative remedies.

"A statute may grant an agency exclusive jurisdiction … by establishing a pervasive regulatory scheme that impliedly indicates that the Legislature intended

---

[61]     *Id.* § 39.159(b); *see id.* § 35.004(e).

[62]     *PUC v. Luminant Energy Co.*, 691 S.W.3d 448, 463 (Tex. 2024).

[63]     TEX. UTIL. CODE § 35.004(e).

[64]     *See id.* §§ 39.151(d), 39.159(d).

[65]     *See id.* § 39.159(b)(3), (d).

for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed."[66] If exclusive jurisdiction is established, "the claimant must pursue and exhaust all available administrative remedies before turning to the courts."[67]

"Section 39.151's grant of extensive authority to the PUC over ERCOT and its detailed regulation of the particulars of ERCOT's functions constitute a pervasive regulatory scheme."[68] The PUC therefore has exclusive jurisdiction so long as Aspire's declaratory and ultra vires claims "fall within that jurisdictional scope."[69] Aspire's claims do because they are directed at ERCOT's protocols relating to its statutory obligations to ensure a reliable grid through the development and implementation of Ancillary Services.[70] It was therefore incumbent upon Aspire to follow the "process for review of ERCOT protocols" contained in the PUC's rules: pursing alternative dispute resolution with ERCOT,[71] then filing a complaint with the PUC,[72] and then filing a suit for judicial review under the substantial evidence rule.[73] *RWE*, 691 S.W.3d at 492 n.11. But Aspire "did not engage in that process," *id.*, and so it failed to exhaust its administrative remedies, depriving the district court

---

[66]     *CPS Energy*, 671 S.W.3d at 617.

[67]     *Id.* at 617–18; *see Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 194 (Tex. 2024) ("If the agency has exclusive jurisdiction over a particular issue, a trial court lacks jurisdiction over a claim involving that issue until the claimant has exhausted all available administrative remedies.").

[68]     *CPS Energy*, 671 S.W.3d at 618.

[69]     *Id.* at 617.

[70]     *See* TEX. UTIL. CODE § 39.159(b), (d).

[71]     *See* 16 TEX. ADMIN. CODE §§ 22.251(d) ("An affected entity must attempt to challenge or modify ERCOT conduct using the Applicable ERCOT Procedures before filing a complaint with the [PUC]."); ERCOT, Nodal Protocols § 20.1 (Alternative Dispute Resolution).

[72]     *See* 16 TEX. ADMIN. CODE §§ 22.251, 25.362(c)(5).

[73]     *See* TEX. UTIL. CODE § 15.001.

of jurisdiction.

Aspire argues that it did not have to follow the procedure for reviewing ERCOT protocols because APA § 2001.038(d) dispenses with the exhaustion requirement when a plaintiff seeks a declaration challenging the validity of a rule.[74] But we held above that the ERCOT-adopted *protocols* establishing ECRS are not PUC-adopted *rules* under the APA. Therefore, § 2001.038(d)'s exception does not apply here.

## CONCLUSION

We affirm the trial court's orders granting the PUC's and ERCOT's pleas to the jurisdiction.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[74] *See* TEX. GOV'T CODE § 2001.038(d) ("A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.").