# Supreme Court of Texas

No. 24-0447

The State of Texas and Kyle Madsen in his Official Capacity as
Director of Right of Way,

*Petitioners*,

v.

JRJ Pusok Holdings, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE YOUNG, concurring.

As the Court's opinion well and thoroughly explains, sovereign immunity poses no barrier to repurchase claims brought under Chapter 21 of the Texas Property Code. The legislature's choice to place the repurchase right in Chapter 21—our State's comprehensive eminent-domain scheme, within which sovereign immunity does not apply—is *how* the legislature clearly and unambiguously waived immunity for suits like this one. The Court could stop there, but it confirms this result by invoking various inquiries suggested by our sovereign-immunity precedents. The Court's application of those precedents is entirely accurate, and I join its

opinion in full. I write separately only to express my view that assessing whether a statute waives sovereign immunity can and should be simpler than our precedents may suggest.

*First*, a postulate of our law is that the legislature "must use 'clear and unambiguous language'" to waive sovereign immunity. *Hillman v. Nueces County*, 579 S.W.3d 354, 360 (Tex. 2019) (quoting *Tooke v. City of Mexia,* 197 S.W.3d 325, 329 (Tex. 2006)). This principle is not unique to Texas law; it inheres in the very nature of sovereign immunity, which is why the leading treatise on interpretation can frame it in general terms: "A statute does not waive sovereign immunity . . . unless that disposition is unequivocally clear." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 281 (2012).

Like any clear-statement rule, this one's effect is to place a substantive thumb on the scale. Because clear-statement rules are powerful, they can be dangerous. They are meaningful only because they direct courts to results that courts might otherwise not reach. True, some cases—the easiest ones—will come out the same way with or without such a rule, but if *no* cases come out differently, the rule is illusory and achieves nothing. Because meaningful clear-statement rules drive judgments, mistakenly adopted clear-statement rules generate judicial error.

But it is also judicial error for courts *not* to adopt and apply clear-statement rules that are warranted. Essential clear-statement rules recognize and implement principles that are woven into the fabric of the law or that are built into the law's very foundations. Refusing to find "accidental" or casual waivers of sovereign immunity is a good example. We cannot avoid having clear-statement rules, but neither may courts

2

impose such rules whenever they feel like it. Clear-statement rules are valid when they recognize default principles of such importance that *not* adopting them would override substantive and structural legal principles, typically of constitutional magnitude.

In those instances, clear-statement rules function much as the doctrine of constitutional avoidance does—they assure the legislature that courts will not deem it to have crossed important lines unless and until it does so with clarity. Clear-statement rules of that sort provide freedom for the legislature to address complicated issues without having to anticipate every conceivable lawyerly argument that—*surprise!*—the adopted statute *actually* adjusts important governmental interests without the legislature's ever having considered them.

At the same time, every clear-statement rule "effectively impose[s] a 'clarity tax' on [the legislature] by demanding that it speak unequivocally if it wants to accomplish certain ends," such as waiving sovereign immunity. *Biden v. Nebraska*, 600 U.S. 477, 508 (2023) (Barrett, J., concurring) (quoting John Manning, *Clear Statement Rules and the Constitution*, 110 Colum. L. Rev. 339, 403 (2010)). It is a "tax" in various ways, including forcing the legislature to consciously think about specified high-importance issues. One of the most important ways clear-statement rules "tax" legislative bodies is by preventing them from avoiding accountability for their choices or shifting responsibility to the judiciary. If sovereign immunity is waived, it is because the legislature *clearly* waived it—not because a court has read a waiver into a statute in a way that the legislature can later plausibly disclaim. And if it is *not* waived when the People expect it should be, the legislature cannot blame the courts rather

3

than itself for that result. The same is true for any area subject to a clear-statement rule. *See, e.g.*, *S.C. v. M.B.*, 650 S.W.3d 428, 436 (Tex. 2022) (explaining that only a clear statement will allow us to find a statutory divestiture of subject-matter jurisdiction, so we "resist classifying a provision as jurisdictional absent clear legislative intent to that effect").

Every clear-statement rule—every thumb on the scale—must therefore be justified by a structural or interpretive principle such that *not* adopting the rule would inject error into the law. Given the universal recognition of the essential consensus that sovereign immunity cannot be waived by "accident" or implication, finding a waiver without a clear statement by a legislative body would be intolerable. *See, e.g.*, *Tooke*, 197 S.W.3d at 331 (describing sovereign immunity as "'an established principle of jurisprudence in all civilized nations' [that] required no justification" when this Court first acknowledged it (quoting *Beers v. Arkansas*, 61 U.S. 527, 529 (1857))); *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847) (recognizing the common-law rule that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent"); *see generally* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 145–50 (2010) (tracing the history of the sovereign-immunity clear-statement rules in early American jurisprudence).

Sovereign immunity protects the public fisc by "leav[ing] to the Legislature the determination of when to allow tax resources to be shifted 'away from their intended purposes toward defending lawsuits and paying judgments.'" *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (quoting *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (plurality opinion)). And it preserves the

separation of powers "by preventing the judiciary from interfering with the responsibilities of other branches." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 738 (Tex. 2020) (citing *Hughes v. Tom Green County*, 573 S.W.3d 212, 218 (Tex. 2019)). We would disrespect the legislature's authority if we casually found exercises of the solemn power to waive sovereign immunity. Because the legislature *knows* that we will not impute such an intention to it without unmistakable clarity, our resulting decisions will be reliable and predictable to it and to the public in ways that they could not be without the clear-statement requirement.

*Second*, therefore, our task is to interpret a statute and—based upon its text, context, and statutory history—assess whether the legislature has evinced with the requisite clarity an intent to waive sovereign immunity. That task is often quite simple. The legislature can be clear by expressly stating something like: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." Tex. Civ. Prac. & Rem. Code § 101.025(a); *see also post* at 9, 15 (Hawkins, J., dissenting) (collecting examples). Or it may waive sovereign immunity by making the State a necessary party to litigation, *see post* at 15 (citing Tex. Health & Safety Code § 571.0167(b)), which is a clear enough indication of its intent that the State *be* a party and thus a clear enough indication of its waiver of immunity.

An express waiver is therefore the easiest but not the only way that the legislature may satisfy its obligation to consent to suit or liability *clearly* if it wishes to consent at all. Requiring clarity is not the same as requiring formulaic or magic words.

*Third*, applying these principles within this preexisting framework makes clear that the legislature's waiver of sovereign immunity here was

5

manifest, albeit not "express," from the start. That "sovereign immunity does not apply in eminent-domain proceedings" is well established. *Hidalgo County Water Improvement Dist. No. 3 v. Hidalgo County Irrigation Dist. No. 1*, 669 S.W.3d 178, 188 (Tex. 2023). That is at least in part because "a governmental entity may be sued for inverse condemnation, by either a public or private landowner, for taking the owner's property without paying just compensation." *Id.* at 187; *see also City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022) (explaining that "our constitutions" provide the vehicle for inverse-condemnation claims). The repurchase right is a product of legislative grace, not constitutional mandate; nothing *requires* the legislature to waive sovereign immunity as to that right. But it did so nonetheless, and we can be sure of that because the legislature chose to place the repurchase right within our State's comprehensive eminent-domain scheme, as to which everyone agrees sovereign immunity is inapplicable. That legislative choice makes the waiver here no less clear than if it had been express.

*Fourth*, I would find that conclusion to be enough. I would prefer to begin and end there without wading into "whether the statutory provisions would serve any purpose absent a waiver of immunity," *Hillman*, 579 S.W.3d at 360 (quoting *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 844 (Tex. 2009)), asking "whether a statute makes any sense if immunity is not waived," *Oncor Elec. Delivery Co. v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 850 (Tex. 2012) (quotation omitted), or diluting this strong-form canon by "not requir[ing] perfect clarity" if a "statute creating specific, restricted 'rights' . . . cannot reasonably be read to tacitly condition their exercise on a separate waiver of immunity," *id.*

The Court addresses these considerations, *see ante* at 15–18, and I acknowledge that they have roots in our precedents, *see Hillman*, 579 S.W.3d 354 at 360 (enumerating five factors relevant to finding a sovereign-immunity waiver). I take the Court's opinion to accurately reflect the precedents it invokes. I agree with the Court that the answers to these inquiries clearly favor the outcome reached today. But they are not *necessary* for the result today, and I do not read the Court's opinion to deem them outcome-determinative. At best, these assessments are, as here, redundant and merely emphasize that a finding of waiver must be rooted in a statute's text. Sometimes they may be affirmatively harmful, though, by asking us to assume the role of the legislature by second-guessing whether sovereign immunity makes sense, is necessary, or is helpful for effectuating a statutory scheme. The very nature of a clear-statement rule is inconsistent with allowing questions like that to be outcome-determinative.

No such problem arises today. But in a future case where those meandering questions and inquiries are more difficult to answer and turn out to matter to the result, I hope that the Court will discard them. I do not regard today's opinion as further entrenching those inquiries, and I think its judgment is entirely justified based on the statute's text and context. On that understanding, I gladly join the Court's opinion.

Evan A. Young
Justice

**OPINION FILED:** June 12, 2026

7